IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

A'KINBO J.S. HASHIM
(f/k/a JOHN D. TIGGS, JR.),                                    OPINION AND ORDER

                              Petitioner,                          13-cv-65-bbc

           v.

MICHAEL BAENEN,

                              Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner A'kinbo J.S. Hashim, a/k/a John D. Tiggs, a prisoner at the Green Bay

Correctional Institution, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254

regarding the revocation of his probation.  The petition has now been fully briefed.  Petitioner

has also filed motions to supplement his petition and to strike portions of respondent's

answer.  Because none of petitioner's arguments about the inadequacy of his revocation

proceedings or ineffectiveness of his revocation counsel have merit, I will deny the petition.

Additionally, I will deny his motions to supplement his petition and to strike portions of

respondent's answer.

From the materials submitted by the parties and state court records available

electronically, I find the following facts.


FACTS

On April 9, 1996, petitioner was sentenced to an indeterminate prison term of 112

months on one armed robbery charge and an imposed and stayed term of 15 years, subject

to 15 years of probation, on a second armed robbery charge. On October 2, 2003, petitioner was sentenced to two years of initial confinement and three years of extended supervision on a charge of battery by a prisoner, with the sentences to run consecutively to the armed robbery sentence. In December 2007, petitioner was released to serve his terms of probation and extended supervision.

On June 25, 2008, petitioner was arrested on allegations by Jason Briggs, aged 17, that petitioner battered him and forced him to participate in oral sex. Petitioner was interrogated by Waukesha Police Detective Richard Haines. After the interrogation, Haines informed petitioner's probation agent of the arrest; the agent decided to have petitioner detained on a probation hold, and revocation proceedings were initiated. At some point following his detention, petitioner told his probation agent that he wanted to waive the preliminary and final revocation hearings, but the agent would not accept his waiver because she thought he was too upset at that time to waive his rights.

On July 22, 2008, a preliminary revocation proceeding was held, with court-appointed counsel representing petitioner. The Division of Community Corrections recommended revocation of petitioner's term of probation on his second 1996 armed robbery conviction and his extended supervision on his 2008 battery of a prisoner conviction. The division's magistrate found probable cause to detain petitioner regarding the new charge of oral sex, but not for the charge of battery. Petitioner remained in custody pending the final hearing. He received a document stating that the department intended to pursue revocation on the second count, utilizing additional evidence.

2

Petitioner's final revocation hearing took place on February 5, 2009.  Petitioner's

probation agent introduced evidence, including photographs that had not been used in the

preliminary hearing, and elicited testimony from Detective Haines and alleged victim Briggs.

The administrative law judge found as follows:

> Mr. Hashim did not dispute the fact that he took Mr. Briggs to his residence
> on the date in question, nor does he dispute the fact that he kissed/ "made out"
> with Mr. Briggs. Mr. Hashim claims that Mr. Briggs and he gave each other
> hickeys and that this contact was consensual.  However, Mr. Hashim denies
> engaging in oral sex with Mr. Briggs.

> Mr. Briggs appeared at the hearing and testified that on the occasion in
> question, he spoke to Mr. Hashim, because he believed Mr. Hashim was a
> lawyer. Mr. Briggs testified that he got into a white Cadillac with Mr. Hashim
> and that instead of driving him home, Mr. Hashim drove him to a secluded
> location where he asked Mr. Briggs if he had ever been seduced by a man
> before. Mr. Briggs testified that Mr. Hashim then bit his neck. Mr. Briggs
> testified that Mr. Hashim pulled out his, Mr. Briggs's penis, and put his, Mr.
> Hashim's, mouth on it. Mr. Briggs testified that he was 17 years-old at the
> time and did not give Mr. Hashim consent to do this.

> * * *

> Mr. Briggs gave very credible testimony. Accordingly, it is found that Mr.
> Hashim violated his rules of supervision by sexually assaulting Mr. Briggs as
> asserted in allegation one.

> * * *

> Mr. Briggs testified that after performing oral sex on him, Mr. Hashim the[n]
> drove to his, Mr. Hashim's residence. Mr. Briggs testified that Mr. Hashim
> brought him to the basement room where Mr. Hashim resided. Mr. Briggs
> testified that Mr. Hashim had him take his pants off. Mr. Briggs testified that
> Mr. Hashim came from behind and hit him with what felt like a belt. Mr.
> Briggs testified that it hurt and that he said something like, "ow".

> * * *

3

> Mr. Briggs gave credible testimony. Accordingly, it is found that Mr. Hashim violated his rules of supervision by battering Mr. Briggs, as asserted in allegation two.

Dkt. #17, Exh. A at 2-3.  The administrative law judge stated that petitioner should begin serving his 15-year sentence for armed robbery and should be returned to court for sentencing on the 2008 battery by a prisoner conviction.

Petitioner raised the issues that are the subject of this federal habeas proceeding in two ways.  First, he appealed the administrative decision revoking his probation in certiorari proceedings in the Circuit Court for Grant County, which affirmed the revocation on October 16, 2009.  Petitioner appealed that decision, but it was affirmed on October 20, 2011 by the Wisconsin Court of Appeals.  The Wisconsin Supreme Court denied petitioner's petition for review on April 13, 2012.

Also, petitioner filed a petition for writ of habeas corpus in the Circuit Court for Waukesha County, alleging that he had received ineffective assistance of counsel in the revocation proceedings.  (In Wisconsin, claims for ineffective assistance of revocation counsel cannot be brought in certiorari actions, and instead are reviewable in state habeas corpus proceedings.  State ex rel. Stokes v. Jenkins, 2010 WI App 120, ¶5, 329 Wis. 2d 269, 789 N.W.2d 753; State v. Ramey, 121 Wis. 2d 177, 182, 359 N.W.2d 402, 405 (Wis. Ct. App. 1984).)  After his petition was denied by the circuit court, the Wisconsin Court of Appeals affirmed the decision on June 8, 2011, and the Wisconsin Supreme Court denied petitioner's petition for review on December 1, 2011.

4

OPINION

Petitioner brought the following ten claims in his petition:

- the department acted arbitrarily by refusing to accept his attempted waiver of the preliminary and final revocation hearings;

- the department lost competency to proceed by not holding the preliminary hearing within 15 days;

- the department failed to act according to law when it proceeded on the battery violation after the magistrate did not find probable cause for it at the preliminary hearing;

- the department acted arbitrarily by failing to conduct an independent investigation;

- the department failed to act according to law when it failed to record or transcribe the preliminary hearing or to provide either a DVD or transcript of petitioner's police interview that was relied upon at the preliminary hearing;

- the administrative law judge acted arbitrarily or contrary to law when he refused to allow petitioner to represent himself at the final hearing;

- the administrative law judge deprived petitioner of his right to impeach the 17-year-old victim by refusing to allow petitioner to present evidence about the victim's prior criminal convictions;

- the administrative law judge denied petitioner the right to fully testify in his defense;

- the administrative law judge acted contrary to law by soliciting additional evidence after the hearing; and

- petitioner received ineffective assistance of counsel in the revocation proceedings, contributing to many of the errors stated in the above-listed claims.

However, in his opening brief, petitioner developed only several of these claims, all but one

relating to his allegations of ineffective assistance of counsel:

5

(1) the department acted arbitrarily by refusing to accept his attempted waiver of the preliminary and final revocation hearings;

(2) he received ineffective assistance of counsel when counsel allowed the department to hold the preliminary hearing after 15 days, after it no longer had jurisdiction to do so;

(3) he received ineffective assistance of counsel when counsel allowed the final revocation proceeding to include the battery violation after the magistrate did not find probable cause for it at the preliminary hearing;

(4) he received ineffective assistance of counsel when counsel allowed the department to fail to preserve the record created at the preliminary hearing; and

(5) he received ineffective assistance of counsel when counsel "chose to repudiate an investigation" and allowed the department to do the same, harming petitioner's ability to defend the revocation, particularly by impeaching witnesses.

Because it is petitioner's burden to show that he is entitled to habeas relief, I conclude that he has waived the issues raised in his petition that he did not develop in his opening brief. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009) (arguments not raised in opening brief are waived).  Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002) (appellant waived constitutional claims by omitting them from brief, thereby forfeiting claim to collateral relief).  He may proceed only on the five claims set out above.

The federal statute governing petitions for writs of habeas corpus, 28 U.S.C. § 2254, requires a "highly deferential" standard of review.  Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (internal quotation and citation omitted).  Under 28 U.S.C. § 2254(d), a district court may not grant a state prisoner's petition

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

This provision means that on habeas review, federal courts are usually limited to a deferential review of the reasonableness of a state court decision, rather than its absolute correctness.  E.g., Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

For purposes of reviewing the reasonableness of the state court's decision, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786–87.  The relevant state court decisions for this court's review are the Wisconsin Court of Appeals' decisions, because the court of appeals was the last state court to address petitioner's claims on the merits.  Stevens v. McBride, 489 F.3d 883, 902 n.2 (7th Cir. 2007) ("For purposes of our review . . . the operative state-court decision 'is that of the last state court to address the claim on the merits.'") (quoting Garth v. Davis, 470 F.3d 702, 710 (7th Cir. 2006)).

## A.   Attempted Waiver of the Revocation Proceedings

First, petitioner argues that he had a due process right to waive the revocation proceedings and, had this right been recognized, he would be facing a much shorter sentence. Petitioner seems to think that if he had been allowed to waive the proceedings, the state would have been precluded from requiring him to serve his 15-year imposed and stayed

sentence for armed robbery.  Relying on the Department of Corrections' "revocation matrix" under which the department's usual recommendation for offenses against bodily security is a term of 21 months and 7 days, he says that his probation agent was prepared to make that recommendation at the time petitioner sought waiver of the hearings, because the agent was unaware of the imposed and stayed 15-year sentence on the second armed robbery charge from 1996.  Petitioner misconceives his situation.  Under Wis. Stat. § 973.10(2)(b), when an offender is revoked on a "imposed-and-stayed" sentence, the Department of Corrections is directed to order the offender directly to prison to begin serving the sentence previously imposed.   It is unlikely that a probation officer's lack of knowledge of the stayed sentence would bar the state from following its usual procedure.  Petitioner has not cited any instance in which this has happened.

Moreover, there is no reason to believe that petitioner has a federal due process right to waive his probation hearings.  He has not cited any authority that identifies such a right and I can locate none.  Unless he has a federal claim at stake, he has no right to federal habeas relief.  Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004) ("remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene.").

Even if petitioner had such a right, the state court of appeals concluded that he was not harmed by his agent's decision to refuse his waiver:

> We question the factual basis for Hashim's premise that he would have been likely to receive a lesser sentence if he had been allowed to waive his

8

hearings immediately. First, the fifteen-year term for the armed robbery charge had already been imposed in 1996; that sentence automatically became effective upon revocation. Second, the ALJ explicitly rejected the Department's recommendation on the battery charge as inadequate, and would not have been bound to follow that recommendation just because Hashim had waived one or both of his hearings.

   In any event, we are not persuaded that it was arbitrary for the probation agent to refuse to accept Hashim's immediate waiver request when she believed that he was in too emotional a state to make the decision, and she did not even have the reincarceration data with her to fill out the form. Hashim could have renewed his request at the beginning of either hearing, and did not do so.

Dkt. #1, Exh. A at 4.

   There is nothing unreasonable about this ruling. Moreover, the state court reasonably found that petitioner could have later waived his right to the hearings but chose not to.


## B.  Ineffective Assistance of Counsel

   All of petitioner's remaining claims have to do with ineffective assistance of counsel at his probation proceedings. The Wisconsin Court of Appeals considered these claims in its June 8, 2011 decision affirming the denial of his petition for a state writ of habeas corpus, using the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Before addressing the merits of these claims, I note that petitioner has filed a motion to strike portions of respondent's answer, dkt. #22, on the ground that respondent failed to follow Rule 5(b) and (d) of the Rules Governing Section 2254 Cases by not responding to his claims of ineffective assistance of counsel.   He believes that his allegations on that issue should therefore be considered uncontested.

1. <u>Motion to strike</u>

Petitioner starts out by arguing that respondent failed to comply with Rule 5(b) because he did not address petitioner's allegations about ineffective assistance in the answer. Rule 5(b) states, "The answer must address the allegations in the petition.  In addition, it must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations."

In his answer, respondent denied that petitioner is entitled to habeas relief on his ineffective assistance of counsel claims, stating, "This claim is not properly presented in Hashim's present petition because the claim challenges a different state case with a different underlying judgment of conviction, court of appeals decision and supreme court order denying review." Dkt. #17 at 11.  In his brief in opposition to the petition, respondent states that he thought petitioner was referring to counsel from a different case, when in reality the lawyer mentioned by petitioner, Douglas Bihler, was petitioner's attorney at the preliminary stages of the revocation.  (Ultimately, petitioner was represented by three different lawyers at different stages of the revocation proceedings).

Respondent's answer is somewhat puzzling.  Even if he had been correct that Bihler did not serve as counsel in the revocation at issue, it is clear from the petition that petitioner believes all three of his attorneys were ineffective, not just Bihler.  Nonetheless, I see no reason to grant petitioner's request to consider his ineffective assistance of counsel claims "unopposed," when it is clear from other portions of the answer that respondent does not

believe that any of counsel's alleged deficiencies prejudiced petitioner.  As discussed further below, respondent disputes all of petitioner's assertions about the underlying errors in the proceedings that petitioner believes could have been avoided by proficient counsel.

Petitioner argues also that respondent failed to comply with Rule 5(d) by failing to submit copies of the briefs and decision from the appeal of the habeas corpus proceedings in Waukesha County at which petitioner's ineffective assistance of counsel claims were addressed.  The only such materials respondent submitted with his answer were documents pertaining to the other ruling petitioner has challenged in this case, which is the appeal of the certiorari proceedings from Grant County.

Petitioner does not cite any authority suggesting that this failure should result in respondent's forfeiture of his defense of these claims, and I can locate none.  The most I might do is ask the state to provide these documents, but it is unnecessary in this case; petitioner has already provided the court a copy of the court of appeals order affirming the Circuit Court for Waukesha County and I can locate the state's brief on the Wisconsin Court of Appeals Access electronic database.  I see no reason to delay disposition of this case to obtain petitioner's state brief when respondent is not asserting any procedural barriers that might require delving into the parties' appellate briefs.  Moreover, petitioner has fully outlined his claims in both his petition and brief in this court.  Accordingly, I will deny his motion to strike.

11

2. <u>Merits</u>

Under <u>Strickland</u>, a petitioner seeking to prove ineffective assistance of counsel must establish deficient performance and resulting prejudice. <u>Id.</u> at 690-92. To show deficient performance, the petitioner must point to specific acts or omissions that were "outside the wide range of professionally competent assistance." <u>Id.</u> at 690. For its part, the court must "strongly presume[] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

The state court of appeals denied petitioner's ineffective assistance claims, stating as follows:

> Tiggs was on probation when he was charged with sexually assaulting and battering a minor. Tiggs admitted to having sexual contact with the minor, and his probation was revoked.
>
> * * *
>
> Tiggs asserts various ways in which the circuit court erred when it denied his habeas petition. The record shows, however, that Tiggs admitted to the conduct that led to his probation being revoked. Consequently, Tiggs did not and cannot establish that he was prejudiced by any alleged errors committed by his attorneys.

Dkt. #1, Exh. #1B at 2-3.

It is not clear whether the court of appeals' decision was based on a reasonable determination of the facts. Although the factual basis for the conclusion that petitioner was not prejudiced by his revocation counsel's performance hinged on the court's determination

12

that "Tiggs admitted to the conduct that led to his probation being revoked," this factual finding is not borne out by the revocation hearing record. According to the administrative law judge, petitioner was charged with (1) performing oral sex on 17-year-old Jason Briggs; and (2) striking him with a leather belt. At the hearing, the only testimony concerning petitioner's supposed admission to this conduct came from Detective Haines, who testified as follows:

> Q: During [Haines's conversation with petitioner], did he admit to having sexual contact with Jason Briggs?
>
> [Haines]: He did.
>
> Q: And how did he define that sexual contact?
>
> [Haines]: He stated that he had done hugging, kissing and he stated that he had both touched Mr. Briggs' penis and had Mr. Briggs touch his penis as well.

Trans. of Revoc. Hearing, Dkt. #17 Ex. E at 80.

Although my review of the record does not reveal a copy of the conditions of petitioner's probation, one of the standard terms of probation enumerated in Wisconsin Administrative Code § DOC 328.04(3) is to "Avoid all conduct which is in violation of federal or state statute . . . ." Oral sex with a 17-year-old is a class A misdemeanor in Wisconsin. Wis. Stat. § 948.09 (titled "Sexual intercourse with a child age 16 or older); § 948.01(6) (term "sexual intercourse" includes oral sex). From my review of the Wisconsin statutes, it appears that mere "sexual contact" with a 17-year-old—for example, petitioner's admission that he touched the 17-year-old's penis—does *not* violate Wisconsin law. (Wis.

Stat. 948.02, titled "Sexual assault of a child," covers sexual intercourse and sexual contact with children age 16 and younger.)

Not only would it be a stretch to interpret Haines's testimony as indicating that petitioner admitted to performing oral sex on Briggs, but petitioner's own testimony at the hearing directly contradicted Haines's. As the administrative law judge stated, petitioner *denied* engaging in oral sex with Briggs.

However, even assuming that the court of appeals' decision was based on an unreasonable determination of the facts, that does not mean that petitioner is entitled to habeas relief. Rather, this court must perform a *de novo* review (meaning a review without deference to the state court of appeals) of petitioner's ineffective assistance of counsel claims. Carlson v. Jess, 526 F.3d 1018, 1024 (7th Cir. 2008) ("Because the trial court based its decision on an unreasonable factual determination, the substantive merits of Carlson's claim are analyzed under the pre-AEDPA standard—that is, *de novo*—because there is no state court analysis to apply AEDPA standards to.") (citing Conner v. McBride, 375 F.3d 643, 655 n.5 (7th Cir. 2004)). After performing this review, I conclude that petitioner has not shown that he was denied the effective assistance of counsel.

Petitioner's problem is that he has not shown that he was prejudiced by the actions of counsel raised in his claims. For starters, the first two of petitioner's claims rest on his misunderstanding of Wisconsin law. He argues that counsel erred in (1) allowed the department to hold the preliminary hearing after 15 days, which petitioner believes means that it no longer had jurisdiction to revoke him; and (2) in allowing the final revocation

14

proceeding to include the battery violation after the magistrate did not find probable cause for it at the preliminary hearing.   However, a failure to hold the preliminary revocation hearing within the 15-day deadline set out in Wis. Stat. § 302.335(2)(a) does not divest the Department of Corrections of jurisdiction over the revocation proceedings.  State ex rel. Jones v. Division of Hearing & Appeals, 195 Wis. 2d 669, 673, 536 N.W.2d 213, 215 (Ct. App. 1995).   Additionally, it is not necessary that probable cause for each alleged probation violation be found at the preliminary hearing.  If evidence is adduced at the final hearing to support all of the charges, all of them may be considered.  State ex rel. Flowers v. Department of Health and Social Services, 81 Wis. 2d 376, 392, 260 N.W.2d 727, 736-37 (1978). Therefore, petitioner would not be entitled to habeas relief on these claims even if counsel had been constitutionally ineffective in the preliminary stages of the proceedings.

Petitioner summarizes his final and interrelated two claims as follows:

Mr. Hashim received ineffective assistance of revocation counsel when [counsel] "failed to enter an objection to the department's decision not to preserve the record created during the preliminary hearing and subsequently chose to repudiate an investigation as did the department . . . which effectively impeded Mr. Hashim to effectively impeach witnesses and defend against the revocation allegations.

Pet.'s Br, dkt #21 at 53.  It is somewhat difficult to track the argument about the "preservation" of the preliminary hearing record.  Petitioner stated in his petition that the revocation hearing record did not contain a transcript from the preliminary hearing or a transcript of the DVD recording of petitioner's June 25, 2008 interrogation by Detective Haines.  Petitioner seems to be arguing that counsel's failure to insure that the preliminary hearing record was preserved hurt him in two ways:  (1) it prevented a proper challenge to

15

the adequacy of the preliminary hearing; and (2) it resulted in the omission of exculpatory evidence from the record.

The flaw in the first argument is that petitioner has no evidence that the preliminary proceedings were defective in ways that would have resulted in the dismissal of the revocation proceedings and his release from custody. As explained above, petitioner cannot succeed on his arguments about the state's failure to meet the 15-day deadline for the preliminary hearing set forth in Wisconsin law or the reinstatement of the battery charge at the final hearing.

Petitioner's second argument that exculpatory evidence was omitted from the record is just a different way of phrasing his final habeas claim: counsel failed to undertake an adequate investigation, which impeded his ability to defend against the revocation. What the claim boils down to is petitioner's assertion that his counsel failed to adduce evidence that would have led to a different result at his revocation proceeding.

In support of this argument, petitioner argues first that counsel should have introduced a DVD recording of petitioner's June 25, 2008 interrogation by Haines, which petitioner believes could have impeached Haines's hearing testimony and Briggs's version of events. Neither party has made the DVD available to this court, but petitioner includes a purported excerpt from the transcript of the interrogation, which matches the excerpt contained as an exhibit to petitioner's brief in his certiorari appeal, dkt. #17, Exh. D at 56. Petitioner asserts that during the interrogation, he stated that he and Briggs kissed each other, leaving "hickeys" on each other's necks, thus arguably undermining Briggs's story that the encounter was

16

nonconsensual.  Petitioner believes that it would impeach the hearing testimony in which Haines testified that he did not recall seeing marks on petitioner's neck or remember petitioner's saying that Briggs had given him hickeys.  According to petitioner's version, when he stated that Briggs gave him hickeys, Haines looked closer and stated, "I see a little something there.  Right here."

As a general rule, failing to present potentially exculpatory evidence can constitute deficient performance by a lawyer.  In this case, however, the state has quoted testimony from Detective Haines's questioning of petitioner in which petitioner arguably admits to touching Briggs's penis with his mouth.  Such testimony would not have favored petitioner, making it obvious why counsel did not present it (or if he was not aware of it, why the omission did not prejudice petitioner).

> Det. Haines: At any point did [Jason] ever touch your, ah, um, your intimate part, your penis?
>
> [Petitioner]: A couple of times, yes.
>
> * * *
>
> Det. Haines: OK. And um at some point did you touch his intimate part, either with your ah hands, your mouth, uh –
>
> [Petitioner]: Umph.
>
> Det. Haines: What?
>
> [Petitioner]: Yes.
>
> Det. Haines: You did. OK, with your hand, and your mouth?
>
> [Petitioner]: M-hmm.

17

Det. Haines: I'm sorry, say that again please.

[Petitioner]: M-hmm. Yes.

State's Nov. 2, 2010 Br. at 11, Hashim v. Murphy, Case No. 2010AP1376, docket available at wscca.wicourts.gov (last visited Feb. 18, 2014). Petitioner does not deny that the DVD includes this testimony. Because oral sex with a 17-year-old is a class A misdemeanor in Wisconsin, an admission to such acts would have constituted a violation of probation and triggered the 15-year sentence in the armed robbery case. Wis. Stat. § 948.09; § 973.10(2)(b) (upon revocation of a "imposed-and-stayed" sentence, Department of Corrections orders offender directly to prison to begin serving sentence court previously imposed). Therefore, counsel could not have been constitutionally ineffective in failing to present petitioner's DVD testimony since it would have only served to implicate petitioner in the commission of a crime.

Next, petitioner argues that counsel did not obtain the DNA test results from neck and penile swabs, which indicated petitioner as the source of DNA on Briggs's neck bites, but were otherwise inconclusive. It is not obvious that such evidence would have helped petitioner defend against revocation and he has not explained why it would have. This is not a case of mistaken identity; petitioner admits he was with Briggs that night and engaged in contact with him. In any case, petitioner does not mention that the DNA report is dated May 21, 2009 or explain how it could have been available for the February 2009 revocation hearing.

Petitioner argues that counsel did not inquire into Briggs's criminal background and exploit it in cross-examination to undermine Briggs's credibility.  However, this is not borne out by the record, which shows that counsel asked Briggs about his criminal record but was limited by the administrative law judge.

Q: You . . . You in fact have a sentencing hearing tomorrow, don't you?

[Briggs]: Yes, I do.

Q: To (inaudible) these . . . And that incident of which you're being sentenced on tomorrow happened back in May of last year, didn't it?

[Briggs]: Around that time, yes.

Q: Okay.

ADMINISTRATIVE LAW JUDGE: All right, now I don't want to spend too much time on Mr. Briggs' legal difficulties unless whatever he has previously been convicted of has something to do with his honesty.

[Petitioner's counsel]: It goes to a potential motive to why he would want to testify against [petitioner].

ADMINISTRATIVE LAW JUDGE: Okay. . . .

* * *

Q: And you've already been sentenced on a different case, a misdemeanor case, correct?

[Briggs]: Yes.

Q: And that sentence, you received probation?

[Briggs]: Yes. I just received a year of probation.

And now you're being sentenced on a new case tomorrow, correct?

[Briggs]: Yes.

19

Trans. of Revoc. Hearing, Dkt. #17 Ex. E at 56-57.  Petitioner does not explain what counsel should have done differently, particularly in light of the administrative law judge's decision to limit such testimony.  State v. Sohn, 193 Wis. 2d 346, 353, 535 N.W.2d 1, 3 (Wis. Ct. App. 1995) (scope of inquiry into criminal record is limited; "The witness may be asked if he or she has ever been convicted of a crime and, if so, how many times. If the witness's answers are truthful and accurate, then no further inquiry may be made.") (citations omitted).

Finally, petitioner argues that counsel did not impeach Briggs's version of events in several inconsequential ways.  For example, petitioner states that counsel failed to impeach Briggs with a police report that placed petitioner at a basketball court between 10:24 and 10:57 p.m. the night of the assault, which contradicts testimony from Briggs that the assault occurred around 10:30 to 11:00 p.m.  (According to petitioner, Briggs's testimony was given in petitioner's preliminary hearing in the corresponding criminal case regarding this incident. This testimony was not included in the record before this court, but apparently was included in the revocation record.)  I cannot see how such a minor time discrepancy could have prejudiced petitioner, who, after all, admitted to having been with Briggs that night. Moreover, on cross-examination, counsel elicited testimony from Briggs that he and petitioner met after 11:00 that night, so counsel actually accomplished what petitioner is claiming he failed to do.  Trans. of Revoc. Hrg., Dkt. #17 Ex. E at 61-62.

Additionally, petitioner believes that counsel failed to impeach Briggs's testimony about why he met with petitioner in the first place.  Briggs stated that he had legal problems and that petitioner's son suggested that Briggs talk to petitioner because he was a lawyer.

Petitioner (who is not a lawyer) believes that counsel should have introduced testimony from petitioner's criminal preliminary hearing in which Briggs testified that petitioner gave him a business card that stated that petitioner was chief operating officer of a legal research and analysis company, not that he was a lawyer.  Even if this is true (petitioner's criminal preliminary hearing is not part of the record in this court), it still backs Briggs's story that he sought out petitioner's legal advice and supports the administrative law judge's conclusion that petitioner "took advantage of a 17 year-old man with legal difficulties."  In short, it is difficult to fathom how any of the discrepancies raised by petitioner could have affected the outcome of the revocation proceedings.  The administrative law judge heard testimony from both petitioner and Briggs, was given reasons to doubt Briggs's testimony, such as his criminal record and discrepancy of the timing in meeting with petitioner, and still concluded that Briggs "gave very credible testimony."  Because petitioner has not shown that he received ineffective assistance of counsel, his petition must be denied.


## C. Motion to Supplement Petition

Finally, I note that petitioner has filed a document titled "Notice of Motion and Motion for an Order Awarding Partial Habeas Corpus Relief for 114.9 Months Postrevocation Sentence Credit," dkt. #16, which I construe to be an attempt by petitioner to supplement his petition to include new claims regarding what he believes to be an erroneous sentence.  I need not consider whether to allow petitioner to amend his petition to include this claim because amendment would be futile.

Petitioner's argument for receiving 114.9 months of credit on his 15-year sentence for the second armed robbery is not well developed and difficult to understand, but he seems to be saying that he should get credit for the prison time he served on his first armed robbery. However, his judgment of conviction on the second armed robbery shows that his 15-year imposed-and-stayed sentence for the second armed robbery was to run consecutively to the first armed robbery. Petitioner cannot receive credit on his sentence after revocation for the time he served on a separate preceding sentence. State v. Boettcher, 144 Wis. 2d 86, 87, 423 N.W.2d 533, 534 (1988) ("Credit is to be given on a day-for-day basis, which is not to be duplicatively credited to more than one of the sentences imposed to run consecutively."); State v. Jackson, 2000 WI App 41, ¶ 19, 233 Wis. 2d 231, 607 N.W.2d 338 ("The core idea of Boettcher is that dual credit is not permitted where a defendant has already received credit against a sentence which has been, or will be, separately served.") (internal quotations omitted).

D. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004). Because petitioner has not shown such a denial, no certificate of appealability will issue.

ORDER

It is ORDERED that

1.  The petition for writ of habeas corpus filed by petitioner A'kinbo J.S. Hashim, a/k/a John D. Tiggs, dkt. #1, is DENIED.

2.  Petitioner's motion to supplement his petition, dkt. #16, is DENIED.

3.   Petitioner's motion to strike portions of respondent's answer, dkt. #22, is DENIED.

4.  Petitioner is DENIED a certificate of appealability.  If petitioner wishes, he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 26th day of February, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge